and extent would clearly not be in furtherance of the functions and duties of the post-office department, but in protection of the private property of individuals, after it had become detached from that department, and was wholly out of the charge of its agents. Such legislation would thus necessarily take the quality and form of a municipal regulation, governing the relations and responsibilities of individuals to each other, in respect to letters and their contents which had been in the post-office, although not obtained from the post-office or any of its agents, or in the possession of a party through any act of fraud or deceit against the post-office laws. And congress would thus in effect be invested with the power to compel every person into whose possession a letter which had been in the post-office should come, to take upon himself the responsibility of carrying and delivering it to the person to whom it should be directed.

We think that the object of this 22d section does not look beyond a possession of letters obtained wrongfully from the post-office or from a letter-carrier. Its design is to guard the post-office and its legitimate agents in the execution of their duties, in the safe-keeping and delivery of letters. After the voluntary termination of the custody of a letter by the post-office or its agents, the property in and right of possession to it belong wholly to its real proprietor, and his rights are under the guardianship of the local law, and not of that of the United States.

The delivery of the letter in the present case by the letter-carrier was to a person at the house, as was supposed by both, of the person to whom it was directed. The defendant was not then at the house, and in no way participated in the delivery. The person who received the letter supposed that it belonged to the defendant, and afterwards carried it and delivered it to him at a different place, as being rightfully his. All action and authority of the post-office department, in respect to the letter, terminated with its delivery to that third person; and, in our opinion, it was not intended that the act of congress in question should apply any longer than while the letter should be within the power and control of that department. From that time the law of the state takes authority over it, as the property of one of its citizens.

A question was raised on the argument, as to the power of congress to legislate on the subject indefinitely, and to pass laws governing the conduct of persons in respect to letters which have been mailed, after such letters have become entirely disconnected from the post-office department. But the construction we have given to the act, limiting its operation to letters yet remaining under the authority of the department, renders it unnecessary to consider this question. Judgment for defendant.

## Case No. 16,001.

UNITED STATES v. PARSONS et al.

[4 Cranch, C. C. 726.] [1]

Circuit Court, District of Columbia. March Term, 1836.

LARCENY — INDICTMENT — OWNERSHIP OF GOODS.

If the goods stolen be charged as the goods of A. B., and if upon evidence, it appears that A. B. was a feme covert, and that the goods were the property of her husband, the court will not instruct the jury to find the prisoners not guilty, if the husband be absent, and not contributing to her support, and she keeping house by herself.

Joseph Parsons, John Callihan, and William Drane were indicted for stealing the goods of Ann Bell. It appeared upon the trial that Ann Bell's husband was temporarily absent seeking employment as a printer elsewhere, and did not contribute to her support; and that she kept house in Washington.

W. L. Brent, for defendant, prayed the court to instruct the jury that if they should be satisfied, by the evidence, that Ann Bell was a feme covert, and that the goods stolen were the property of her husband, they should find the prisoners not guilty upon this indictment.

But THE COURT (CRANCH, Chief Judge, contra), refused to give the instruction.

Verdict, "Guilty."

## Case No. 16,002.

UNITED STATES v. PARSONS et al.

[1 Lowell, 107.] [2]

District Court, D. Massachusetts. Sept., 1866.

SEAMEN—BOND FOR RETURN OF CREW—ACTION—LOSS OF CONSUL'S CERTIFICATE—EVIDENCE OF CONTENTS.

1. A shipmaster, who is sued on his bond for the safe return of his crew, may give parol evidence of the contents of a consul's certificate, authorizing the discharge of one of the men, on satisfactory proof that such a paper was once in existence and has been lost.

2. Notwithstanding the very sweeping language of section 3 of Act Feb. 28, 1803 [2 Stat. 203], and section 8 of Act July 20, 1840 [5 Stat. 395], requiring masters of American vessels to give bond for the return of all the crew, unless discharged in a foreign country with consent of a consul, &c., yet these sections, construed with the aid of the other parts of those statutes, cannot be held to require a master to return to the United States foreign seamen shipped at their own home, for a particular cruise, ending where it began, and discharged there, according to the terms of their contract, though without the consent of a consul.

3. The consent of a consul could not be rightly withheld in such a case, and there is no law requiring it to be asked.

4. Whether the bond is intended to be given for seamen, even if shipped in the United

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]